IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| CHRISTOPHER VAUGHN, § | |
|     Plaintiff, § | |
| § | |
| v. § | EP-20-CV-00246-KC-ATB |
| § | |
| (UNKNOWN) ACOSTA, § | |
|     Defendant. § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered Defendant's "12(b)(6) Motion to Dismiss Defendant in His Official and Individual Capacity" ("Motion"), filed by Defendant (Unknown) Acosta ("Acosta")[1] on December 3, 2020. (ECF No. 18). The matter was referred to this Court pursuant to the Standing Order referring prisoner civil rights cases to United States Magistrate Judges.

For the reasons set forth below the Court **RECOMMENDS** that Defendant's Motion be **GRANTED**, as set forth herein.

## I.    BACKGROUND

###     a.    Procedural Background

Plaintiff Christopher Vaughn ("Vaughn"), proceeding *pro se* and *in forma pauperis*, filed his initial complaint on November 22, 2019, alleging multiple constitutional violations by numerous defendants based upon his time in the custody of the El Paso County Sheriff's Office. (ECF No. 2 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Nov. 22, 2019)). On May 8, 2020, Vaughn filed his amended complaint ("Complaint"), adding Acosta as a defendant in his official and individual capacity, and alleging that Acosta

---

[1] Although the parties refer to Defendant as (Unknown) Acosta, the Court notes that Acosta's full name is Francisco Acosta. (ECF No. 13, 16).

"threw a bucket of water . . . on [Vaughn]" in violation of his Eighth Amendment right against infliction of cruel and unusual punishment. (ECF No. 1, p. 4, 9).[2]

After a Report and Recommendation from this Court ("Report and Recommendation") (ECF No. 30 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Sept. 4, 2020)), the District Court dismissed all claims on September 4, 2020, pursuant to 28 U.S.C. § 1915(e)(1)(2), except for Vaughn's excessive use of force claims against Acosta and Defendant (Unknown) Anaya. (ECF No. 2, p. 21). Subsequently, Vaughn's claim against Acosta was severed and opened as this styled and numbered cause. (*Id.*). On December 3, 2020, Acosta filed the instant Motion seeking dismissal of Vaughn's claims. (ECF No. 18). Vaughn filed his "Opposition to not dismiss complaint" ("Response") on December 18, 2020. (ECF No. 19).

    **b.**    **Factual Background**[3]

In his Complaint, Vaughn seeks to bring an excessive use of force claim against Acosta. (ECF No. 1, p. 9). Vaughn alleges that on November 30, 2019, Officer Acosta "threw a bucket of water" on Vaughn "while in [his] wheel chair [sic]."[4] (ECF No. 1, p. 9). In support of his claim,

---

[2] Although Vaughn alleges his excessive force claims are a violation of his Eighth Amendment right, the District Court previously held that Vaughn's constitutional rights as a pretrial detainee "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." (ECF No. 2, p. 5) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)).

[3] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

[4] On December 12, 2019, Vaughn filed his "Motion for Leave to File an Amended Complaint" ("Supplemental Complaint") (ECF No. 12 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Dec. 12, 2019)), which this Court construed as an amended complaint that was "a supplement to, rather than a replacement of Vaughn's original [c]omplaint." (ECF No. 15, p. 4 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Dec. 23, 2019)). In Vaughn's Supplemental Complaint, Vaughn alleges that Acosta "took a 5 gallon bucket used to mop and threw dirty mop water all over [him] with cleaning [supplies] in it. It hit [Vaughn] in the face and burned [his] eyes." (ECF No. 12, p. 5 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Dec. 23, 2019)).

On January 15, 2020, "Vaughn[']s 2nd Motion to Supplement His Origioral [sic] Complaint" was filed. (ECF No. 21 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Jan. 15, 2020)). On January 24, 2020, the Court received further correspondence from Vaughn. (ECF No. 22 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Jan. 24, 2020)). Therein, Vaughn stated that he wished to have "all that [he] has submitted . . . voided and the court only look [at] and consi[d]er [a] new [complaint]." (*Id.*). The Court construed this correspondence as a motion for leave to file an amended complaint and voluntarily

Vaughn attached an affidavit from inmate Andrew Healing[5] in which Healing states that he "wittnessed [sic] out the view of [his] door with [his] eyes and or ears water with bucket being thrown on [Vaughn]" and that on November 30, Acosta "asked [Healing] for [his] bucket to use." (ECF No. 1, p. 34). In his Response, Vaughn "[clarifies] and states" that Acosta "asked and received a bucket (5 gallons) from Andrew Healing[, and h]e then filled it in the shower with water." (ECF No. 19, p. 1).

## II.   LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be

---

dismiss his previously filed complaints ("Motion to Amend"). Having so construed the Motion to Amend, the Court found that the motion was deficient in that Vaughn did not attach the new amended complaint he sought to file. (ECF No. 23 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Jan. 31, 2020)). The Court then gave Vaughn additional time to supplement his Motion to Amend with the amended complaint he sought to file. (*Id.*). On February 21, 2020, Vaughn filed the supplement to his Motion to Amend consisting of a forty-six-page amended complaint. (ECF No. 27 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. May 8, 2020)). After due consideration, the Court granted Vaughn's Motion to Amend and directed the District Clerk's Office to re-docket the forty-six page "supplement to Vaughn's Motion to Amend [] as an Amended Complaint." (ECF No. 29 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. May 8, 2020)). Thereafter, the District Clerk's Office filed Vaughn's Amended Complaint ("Complaint"). (ECF No. 27 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. May 8, 2020)).

In the Report and Recommendation dated May 12, 2020, this Court erred in its use of the factual allegations in the Supplemental Complaint, although the Court notes this did not affect its findings or recommendations. *See* (ECF No. 30, p. 23 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KCATB (W.D. Tex. May 12, 2020)) ("Vaughn further alleges that . . . Defendant Acosta threw a bucket of *mop water* on him while Vaughn was sitting in his wheelchair *causing Vaughn's eyes to burn*. (ECF No. 27, p. 9) [incorrectly omitted citation (ECF No. 12, p. 5)]. As opposed to Vaughn's allegation against Defendant Seelig, in this instance it appears that *there was contact made with Vaughn* because of Defendant Acosta's actions [of throwing water on Vaughn].") (emphasis added). As Defendant correctly notes in its Motion to Dismiss, Vaughn "never mention[ed] 'mop water' or an alleged injury 'causing his eyes to burn'" in his Complaint, only alleging that Acosta "threw a bucket of water in [his] cell on [him] while in [his] wheel chair [sic]." (ECF No. 18, p. 7) (citing ECF No. 1, p. 9 ¶ 41)).

Further, in Vaughn's Response, Vaughn alleges that Acosta "filled [the bucket] in the shower with water," and makes no further reference to "mop water" or if anything "burned his eyes." (ECF No. 19, p. 1). Accordingly, the Court finds that Vaughn has abandoned his previous factual allegations that the water in the bucket was "mop water" and that it "burned his eyes." (ECF No. 12 under *Vaughn v. El Paso County Jail Annex et al.*, EP-19-CV-00340-KC-ATB (W.D. Tex. Dec. 12, 2019)). Therefore, the Court will not consider these factual allegations in this Report and Recommendation.

[5] As pointed out by Acosta, the Court notes that the affidavit is signed by an "Andrew Healon", not by an Andrew Healing as Vaughn suggested. *See* (ECF No. 1, p. 32, 37). In order to maintain consistency with the pleadings, the Court will refer to this inmate as "Healing" despite the misnomer.

granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam) (citation omitted).

## III.   ANALYSIS

### a.   Vaughn's Claim Against Acosta in His Official Capacity

Acosta argues that Vaughn's claim against him in his official capacity is "equivalent [to a] suit[] against the governmental entit[y] that employ[s him]." (ECF no. 18, p. 4). Further, Acosta argues that Vaughn's Complaint "fails to plead sufficient facts to state a claim to relief that is plausible on its face," because it "do[es] not allege [that] any conduct was the result of an official El Paso County policy or custom." (*Id.* at p. 4-5) (internal quotes and citations omitted).

"A claim against an officer in his official capacity is treated as a claim against the municipality." *Jordan v. Brumfield*, 687 F. App'x 408, 4015 (5th Cir. 2017); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In his Complaint, Vaughn identifies Acosta as an officer "assigned to [the] El Paso County Jail Annex." (ECF No. 1, p. 4). Acosta contends that El Paso County Jail Annex officers are employed by El Paso County. (ECF No. 18, p. 4). Therefore, the Court finds that any claims against Officer Acosta in his official capacity shall be construed as claims against El Paso County. *See generally Feliz v. El Paso County*, 441 F. Supp. 3d 488, 494 n.2 (W.D. Tex. 2020).

Assuming, *arguendo*, that Vaughn had named the proper defendant, El Paso County, in his Complaint, Defendant Acosta argues that "[t]he County of El Paso should not be held liable for Acosta's alleged excessive-use-of-force." (ECF No. 18, p. 4).

Municipalities cannot be held liable under 42 U.S.C. § 1983 based upon a theory of vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *see Peterson v. City of Fort Worth*, 588 F.3d 838,

847 (5th Cir. 2009) ("[A municipality] is liable only for acts directly attributable to it 'through some [sort of] official action or imprimatur.'") (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Municipality liability is "limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Under Section 1983, municipal liability for a policy or custom claim requires proof of: (1) a policy maker; (2) an official policy or custom; and (3) a violation of constitutional rights of which the "moving force" is the official policy or custom. *Piotrowski*, 237 F.3d at 578. Furthermore, only where a municipality adopts a policy that violates a constitutional right, or fails to adopt a policy preventing the violation of a constitutional right "evidence[ing] a 'deliberate indifference' to the rights of its inhabitants[,] can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Therefore, to establish municipal liability, a plaintiff must establish both municipal causation and culpability. *See Snyder v. Trepagnier*, 142 F.3d 791, 795-96 (5th Cir. 1998) ("Plaintiffs seeking to win under this theory must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens.").

Moreover, there are multiple ways in which a custom or policy can be found to exist. First, a custom or policy can stem from a single act by an official with final policymaking authority. *See Pembaur*, 475 U.S. at 481-83 (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability). Second, the custom or policy can also be a policy statement formally announced by an official policymaker.

6

*See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).  Finally, a custom or policy can also be demonstrated through a "persistent[,] widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168; *see Webster*, 735 F.2d at 841.  "For a custom or practice to be considered a de facto policy, however, a plaintiff must allege facts 'showing a pattern of abuses that transcends the error made in a single case.'" *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *15 (W.D. Tex. Nov. 19, 2014) (quoting *Piotrowski*, 237 F.3d at 582).  "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.

Vaughn's Complaint fails to allege the existence of an official policy adopted by El Paso County or the El Paso County Jail Annex.  A plaintiff seeking to establish municipal liability under *Monell* based upon an official policy "may point to a policy statement formally announced by an official policymaker." *Zarnow*, 614 F.3d at 168.  In his Complaint, Vaughn makes no such allegation.  Accordingly, the Court finds that Vaughn has not alleged the existence of an official policy "announced by an official policymaker." *Id.*

Further, the Court finds that Vaughn has failed to allege the existence of a custom within the El Paso County Jail Annex.  Rather than relying on an official policy, a "plaintiff may demonstrate a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipal policy.'" *Id.* (quoting *Webster*, 735 F.2d at 841).  However, "to plead a practice so persistent and widespread as to practically have the force

of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (internal quotes and citation omitted).

In *Peña v. City of Rio Grande City*, "the only 'specific fact' in the complaint [was] the single incident in which Peña was involved." *Id.* The Fifth Circuit held that the plaintiff's allegations were "conclusional and utterly devoid of factual enhancements." *Id.* (quotation marks omitted). Similar to *Peña*, Vaughn's Complaint is devoid of any facts other than those relating to the two isolated incidents which gave rise to his alleged injuries involving Acosta and Officer (Unknown) Anaya. However, "'[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (quoting *Bennet v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)). Therefore, the Court finds that Vaughn has failed to allege a custom in his Complaint sufficient to establish municipal liability under *Monell*.

The Court also finds that Vaughn's allegations contained in his Complaint do not allege the existence of a policymaker, as required to establish municipal liability. In *Peña*, the Fifth Circuit explained that "because the identity of the policymaker is a legal question, courts should not 'grant motions to dismiss for failing to plead [a] specific identity.' Rather, 'the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.'" *Peña*, 879 F.3d at 622-23. (quoting *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016)). The Fifth Circuit then held that the "complaint invite[d] no more than speculation that any particular policymaker, be it the chief of police or the city commissioner, knew about the alleged custom" and found that the plaintiff had failed to allege a policymaker. *Id.* at 622. Just as in *Peña*, Vaughn's Complaint does not suggest the existence of a policymaker. Therefore, the Court finds that Vaughn has not named the proper defendant for a

municipal liability claim and that Vaughn has failed to state a claim for municipal liability. Accordingly, the Court recommends that Acosta's Motion to Dismiss Vaughn's claims against Acosta in his official capacity be granted.

### b.     Vaughn's Claim Against Acosta in His Individual Capacity

Defendant Acosta argues that Vaughn's "claim against Acosta in his individual capacity should be dismissed because Acosta is entitled to qualified immunity." (ECF No. 18, p. 6).

Qualified immunity protects "state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[L]ower courts have discretion to decide which of the two prongs of [the qualified immunity] analysis to tackle first." *Jackson*, 959 F.3d at 200 (quoting *Ashcroft*, 563 U.S. at 735). "The plaintiff has the burden of establishing a constitutional violation and overcoming a [qualified immunity] defense." *Jackson*, 959 F.3d at 201 (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en blanc) (per curiam)). To meet this burden, "the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a [qualified immunity] defense with equal specificity.'" *Jackson*, 959 F.3d at 201 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Jackson*, 959 F.3d at 200-01 (internal citation omitted) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Here, Vaughn alleges Acosta inflicted cruel and unusual punishment upon him through the use of excessive force. Specifically, Vaughn alleges that Officer Acosta asked another inmate for his five-gallon bucket, filled that bucket in the shower with water, and "threw" the water on Vaughn "while in [his] wheel chair [sic]." (ECF No. 1, p. 9, 34); (ECF No. 19, p. 1). Defendant Acosta alleges that "Vaughn's pleadings are not enough to show how any alleged action by Acosta violated a clearly established [c]onstitutional right and how [Acosta's][6] actions were objectively unreasonable." (ECF No. 18, p. 8).

### 1. *Acosta did not Violate Vaughn's Fourteenth Amendment Right to be Free from the Use of Excessive Force*

Pretrial detainees have a constitutional right under the Fourteenth Amendment's Due Process Clause to be free from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015). The Supreme Court has held that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989)). "[I]n the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)).

Vaughn's Complaint here does not allege any facts that indicate above a speculative level that Acosta acted with punitive intent. While Vaughn alleges facts against Officer (Unknown) Anaya from which the Court can infer punitive intent, Vaughn's allegations against Acosta provide minimal details about the alleged incident. *Compare* (ECF No. 1, p. 10) ("[O]fficers Anaya and [unknown] came to [Vaughn's] door. Officer told [Vaughn] we[']re coming in to f*ck you up."), *with* (ECF No. 1, p. 9) ("Officer Acosta . . . threw a bucket of water in my cell on me while in my

---

[6] Although Defendant refers to "Anaya" here, the Court assumes that Defendant intended to refer to "Acosta."

10

wheel chair [sic]. Before this he asked inmate Andrew Healing for his bucket."). Accordingly, the Court finds that Vaughn has failed to plead sufficient factual allegations for the Court to reasonably infer whether Acosta had any punitive intent towards Vaughn.

To prove an excessive force claim absent the expressed intent to punish, "a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. at 396). A court must assess the reasonableness of the force used "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399–400. In determining the objective reasonableness of an officer's use of force, a court should consider the following nonexclusive *Kingsley* factors: (1) "the relationship between the need for the use of force and the amount of force used;" (2) "the extent of the plaintiff's injury;" (3) "any effort made by the officer to temper or limit the amount of force;" (4) "the severity of the security problem at issue;" (5) "the threat reasonably perceived by the officer;" and (6) "whether the plaintiff was actively resisting." *Id.* at 397.

Balancing the factors provided in *Kingsley*, the Court finds that the factual circumstances weigh in favor of Acosta's assertion that his actions were objectively reasonable. Weighing the extent of Vaughn's injury and any effort made by Acosta to limit the amount of force used, the Court notes that Vaughn was subjected to a minor, one-time use of force by Acosta where Acosta's conduct was very brief and caused Vaughn *no* physical injuries. *See, e.g.*, *Andrew v. St. Tammany Parish Prison*, CA No. 15-2105, 2016 WL 447680, at *11 (E.D. La. Jan. 15, 2016) (applying the *Kingsley* factors, the court held that the plaintiff prisoner failed to state a claim when plaintiff was

"subjected to a minor, one-time use of force . . . [, and] the deputy's conduct was very brief and caused plaintiff no physical injuries.").

Even though Vaughn argues that Acosta's actions amounted to "agervated [sic] assault" (ECF No. 19, p. 1), because he was in a wheelchair and did not resist when Acosta threw water on him, the Court recognizes that "the constitutional floor against excessive force is not consonant with common-law assault." *Hanson v. Madison County Detention Center*, 736 F. App'x 521, 530 (6th Cir. 2018); *see also Jackson v. Buckman*, 756 F.3d 1060, 1068 (8th Cir. 2014) ("Even though such a trivial use of force may be cognizable under state tort law, 'the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.'") (quoting *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)) (internal quotes omitted). Therefore, even when a prisoner "does not actively resist, the use of force must cross the *constitutional* line. *Hanson*, 736 F. App'x at 530 (emphasis added).

Although the facts alleged in Vaughn's Complaint suggest that Vaughn was not actively resisting nor a threat to Acosta's safety, "it is clear [regarding the need for the application of force] that the use of force is permissible in a variety of situations, not only when it is necessary to protect oneself from an imminent physical attack by an inmate." *Brown v. Gusman*, CA No. 15-1491-DEK, 2015 WL 6827260, at *5 (E.D. La. Nov. 6, 2015). "For example, the use of force is also appropriate when necessary to control a 'recalcitrant inmate.'" *Brown*, 2015 WL 6827260, at *5 (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)).

Vaughn's Complaint provides evidence that Acosta may have viewed Vaughn as a "recalcitrant inmate." In separate incidences, Vaughn admits to flooding his cell because he did not get "[his] PM snack or [his] milk [that he] was suppose[d] to get with [his dinner]" and to breaking a phone in order to see a "corporal and get medical attention." (ECF No. 1, p. 10-11).

Further, according to the affidavit of inmate Andrew Healing, Vaughn "broke a tooth on [the same day Acosta threw the bucket of water on Vaughn] . . . from what appeared to be a rock," and Healing saw "[Vaughn's] tooth in the bottom row of his left side split in half bleeding with [what Healing thinks] was the nerve hanging out." (ECF No. 1, p. 34-35). In his Motion, Acosta argues that "whatever force Acosta used . . . was possibly used in a failed attempt to tend to Vaughn's broken tooth by pouring water over it." (ECF No. 18, p. 8). In sum, considering Vaughn's past violent responses to issues regarding the meals provided to him, the Court finds that the limited amount of force used, in relation to the need for the use of force, was not substantially more force than needed given the circumstances. Accordingly, the Court finds that Acosta throwing a single bucket of water on Vaughn, which resulted in no injuries to Vaughn, was not objectively unreasonable.

Furthermore, the Fifth Circuit has held that "a *de minimis* quantum of force is not actionable under the Due Process Clause." *Jackson v. Buckman*, 746 F.3d 1060, 1068 (8th Cir. 2014); *see also Bell*, 441 U.S. at 539 n.21 ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.") (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). The Court has found no prior precedent to suggest that Acosta throwing water on Vaughn, without any resulting injury, was more than a *de minimis* level of force. *See, e.g.*, *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) ("Because he suffered no injury, we find that the spraying of Jackson with the fire extinguisher was a *de minimis* use of physical force and was not repugnant to the conscience of mankind."); *see also Young v. Allen*, No. 6:11-cv-596, 2012 U.S. Dist. LEXIS 49529, at *9 (E.D. Tex. 2012) (Eighth Amendment excessive use of force case where "[the officer's] actions in throwing a pitcher of water on [the plaintiff inmate], while unnecessary and un-called for, [did] not amount to anything more than a *de minimis* use of force. [The inmate] did

not allege, nor [did] the medical records show, that he suffered any injury at all as a result of the incident."). Like *Culbertson* and *Young*, Vaughn alleges no injury from Acosta's actions. *See* (ECF No. 1). Further, the only physical contact Acosta made with Vaughn was through the shower water from the bucket. (*Id.* at p. 9); (ECF No. 19, p. 1). Therefore, the Court finds that a single incident of Acosta throwing one bucket of water on Vaughn does not establish a more than a *de minimis* use of force.

In sum, Vaughn's Complaint fails to plead sufficient facts for the Court to infer either that Acosta had punitive intent or that he used more than a *de minimis* level of force. Accordingly, the Court finds that Vaughn has failed to plead that Acosta's actions were an objectively unreasonable use of force that amounted to punishment of a pretrial detainee.

### 2. *Acosta Did Not Violate Any Clearly Established Constitutional Right*

Assuming, *arguendo*, that Acosta throwing water on Vaughn was objectively unreasonable, the court finds that Vaughn failed to meet his burden of establishing that Acosta violated a "clearly established" constitutional right. Vaughn's Complaint only alleges that Acosta "threw a bucket of water in [Vaughn's] cell on [Vaughn] while in [his] wheel chair [sic]." (ECF No. 1, p.9). As discussed above, the Court has found no prior precedent where a court, weighing the *Kingsley* factors, found factual circumstances similar to Vaughn's allegations against Acosta to be a violation of a constitutional right. *See, e.g.*, *Culbertson*, 984 F.2d at 700 (pre-*Kingsley* decision finding that spraying a pretrial detainee with a fire extinguisher was not excessive force nor "repugnant to the conscience of mankind."); *Young*, 2012 U.S. Dist. LEXIS 49529, at *9 (Eighth Amendment excessive use of force case where court found that throwing a pitcher of water on an inmate who suffered no injuries, "while unnecessary and un-called for," did not amount to excessive force).

Absent prior judicial precedent, "extreme circumstances" or "particularly egregious facts" allow a court to find that "any reasonable officer should [] realize[] that [a defendant's actions] offended the Constitution." *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020). In *Taylor v. Riojas*, an inmate was confined in one cell that was "covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet" and then subsequently confined in a second cell that was "frigidly cold . . . [, without a bunk, and], equipped with only a clogged drain in the floor to dispose of bodily wastes" such that the inmate "was left to sleep naked in the sewage." *Id.* at 53 (internal quotes omitted). The Supreme Court held in *Taylor* that "no reasonable correctional officer could conclude, under the extreme circumstances of this case," that confining an inmate in a cell with "such deplorably unsanitary conditions for such an extended period of time" was "constitutionally permissible." *Id.*

Here, Acosta's actions are distinguishable from *Taylor*. No reasonable officer would equate a one-time throwing of water on a prisoner with confining a prisoner for days in feces and sewage. Vaughn's factual allegations do not present "extreme circumstances" or "particularly egregious facts" such that the Court would find that "any reasonable officer should have realized that [Acosta's actions] offended the Constitution." *Taylor*, 141 S. Ct. at 53-54.

Accordingly, the Court here finds that Vaughn's factual allegations, standing alone, do not make it "sufficiently clear" that "every reasonable official would have understood that [throwing water on a pretrial detainee in his wheelchair who is in pain] violates [a constitutional] right." *Jackson v. City of Hearne, Texas*, 959 F.3d at 200 (quoting *Reichle*, 566 U.S. at 664).

3. *Conclusion*

In sum, the Court finds that Vaughn has failed to plead that Acosta's actions were an objectively unreasonable use of force that amounted to punishment of a pretrial detainee. Further,

the Court finds that Vaughn failed to meet his burden to overcome Acosta's qualified immunity defense against the claim that Acosta violated a clearly established constitutional right. Accordingly, the Court recommends that Acosta's Motion to Dismiss Vaughn's claims against Acosta in his individual capacity be granted.

## IV. CONCLUSION

Based on the aforementioned reasons, the Court **RECOMMENDS** that:

- Defendant's Motion to Dismiss Vaughn's claim against Acosta in his official capacity be **GRANTED**; and

- Defendant's Motion to Dismiss Vaughn's claim against Acosta in his individual capacity be **GRANTED**.

**SIGNED** and **ENTERED** this 22nd day of January, 2021.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**